UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Diane O'Neil**

    v.

**Somatics, LLC and Elektrika, Inc.**

Case No. 20-cv-175-PB
Opinion No. 2020 DNH 208

**MEMORANDUM AND ORDER**

In this diversity action, Diane O'Neil, a New Hampshire resident, has sued two out-of-state corporate defendants, Somatics, LLC and Elektrika, Inc., stemming from injuries she allegedly sustained as a result of electroconvulsive therapy with the Thymatron instrument. Elektrika has moved to dismiss the claims against it for lack of personal jurisdiction. In response, O'Neil contends that she requires jurisdictional discovery to show that there is specific personal jurisdiction over Elektrika in New Hampshire. For the following reasons, I grant O'Neil's request for limited jurisdictional discovery and deny without prejudice Elektrika's motion to dismiss.

**I.   BACKGROUND**

The Thymatron is an instrument used to treat severe psychiatric disturbances by inducing a major motor seizure through a brief but intense electrical current applied to a patient's head in a process known as electroconvulsive therapy.

Compl. ¶ 6.  O'Neil underwent electroconvulsive therapy with a Thymatron at the Elliot Hospital in Manchester, New Hampshire, from August 2016 until February 2017.  Compl. ¶ 57.  She allegedly suffered brain damage and permanent neurocognitive injuries as a result of that treatment.  Compl. ¶ 2.

The complaint alleges that Elektrika is "a manufacturer and exclusive supplier" of the Thymatron device, and that Somatics is its "manufacturer, labeler, promoter and distributor." Compl. ¶¶ 6-7.  The defendants are allegedly liable for, among other things, failing to warn O'Neil about the risks of undergoing electroconvulsive therapy and misrepresenting the safety of the Thymatron device.

In support of its motion to dismiss, Elektrika submitted an affidavit of its president, Jesse Pavel.  See Aff. of Jesse Pavel, Doc. No. 15-2 ¶ 3.  Pavel states that Elektrika is incorporated and headquartered in New York.  Doc. No. 15-2 ¶ 5. It has no offices, facilities, employees, agents, or other representatives in New Hampshire.  Doc. No. 15-2 ¶ 6.  He further states that Elektrika does not conduct business, sell products, or market in New Hampshire.  Doc. No. 15-2 ¶ 8. According to Pavel, Elektrika manufactures the main body of the Thymatron in New York and ships it to Somatics in Florida.  Doc. No. 15-2 ¶¶ 11-14.  Somatics then completes the assembly, conducts testing, and sells the finished product to healthcare

2

providers.  Doc. No. 15-2 ¶¶ 15-16.  Pavel states that Somatics "is exclusively responsible for the marketing, sale, and distribution of finished Thymatron instruments," and that Elektrika "does not have direct contact with purchasers or end users of finished Thymatron instruments."  Doc. No. 15-2 ¶¶ 17, 19.

In her opposition to the motion, O'Neil has not presented evidence establishing the existence of personal jurisdiction over Elektrika.  Instead, she contends that jurisdictional discovery would yield such evidence.  O'Neil points to Elektrika's exclusivity agreement with Somatics, which provides that Elektrika is "responsible for handling any repairs of the Thymatrons sent to be serviced."  Ex. 3 to Pl.'s Obj., Doc. No. 16-3 at 2.  As a result, O'Neil anticipates that discovery will show that Elektrika interacted with the Thymatron purchasers in New Hampshire who requested maintenance and repair services.  O'Neil also expects to find evidence that Elektrika marketed the Thymatron device in New Hampshire jointly with Somatics.  She bases this expectation on a 1997 contract between the two companies, which states in its preamble that Elektrika and Somatics have closely collaborated "in the design, manufacture, and marketing of the Thymatron ECT device and accessories worldwide."  Ex. B to Pl.'s Sur-reply, Doc. No. 18-3 at 2.  Finally, O'Neil points to evidence that Elektrika purchases

3

component parts for the Thymatron box from vendors located in New York, New Jersey, and Massachusetts.  See Ex. 2 to Pl.'s Obj., Doc. No. 16-2 at 2.  She contends that discovery may show that Elektrika also utilized New Hampshire-based vendors.

## II.   STANDARD OF REVIEW

District courts enjoy broad discretion when deciding whether to grant a request for jurisdictional discovery.  See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625-26 (1st Cir. 2001).  The request must be "timely and properly supported," must proffer a "colorable claim" for jurisdiction, and must "present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. (internal quotation marks omitted).  The plaintiff must specify the type of evidence she expects to find and provide detailed descriptions of any "'additional pertinent avenues of inquiry' that [she] hope[s] to pursue." Id. at 626 (quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1086 (1st Cir. 1973)).  "Failure to allege specific contacts, relevant to establishing personal jurisdiction, in a jurisdictional discovery request can be fatal to that request." Id. at 626-27 (citing Crocker v. Hilton Int'l Barbados, Ltd., 976 F.2d 797, 801 (1st Cir. 1992)).

## III. ANALYSIS

O'Neil timely requested jurisdictional discovery as part of her objection to Elektrika's motion to dismiss.  See Nordica USA Corp. v. Ole Sorensen, 475 F. Supp. 2d 128, 134-35 (D.N.H. 2007) (holding that request for jurisdictional discovery raised in objection to Rule 12(b)(2) motion was timely).  Thus, the only question is whether she has proffered a colorable claim that Elektrika is subject to specific jurisdiction in New Hampshire.

When assessing personal jurisdiction in a diversity case, a federal court "is the functional equivalent of a state court sitting in the forum state."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)).  The court must determine whether an exercise of jurisdiction is proper under both the forum state's long-arm statute and the due process requirements of the U.S. Constitution.  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  Because New Hampshire's long-arm statute is coextensive with the federal due process standard, however, I need only consider whether exercising personal jurisdiction would comport with due process.  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999).

Due process requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  When a plaintiff asserts specific personal jurisdiction, due process requires that (1) her "claim directly arises out of or relates to the defendant's forum-state activities"; (2) "the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state"; and (3) "the exercise of jurisdiction is ultimately reasonable."  Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).

The relatedness prong is intended to be a "flexible, relaxed standard" that requires "only a demonstrable nexus between the complaint's claims and the activities in the forum that properly may be attributed to the defendant[], such that the litigation itself is founded directly on those activities." PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 18 (1st Cir. 2019) (internal quotation marks omitted).  The thrust of O'Neil's claims is that her injury resulted from the defendants' failure to warn her about the risks of using the Thymatron device and their misrepresentations about its safety.  If

6

proven, O'Neil's allegations that Elektrika participated in marketing the device to New Hampshire residents or provided maintenance and repair services for the Thymatron to New Hampshire customers could show that her claims are related to Elektrika's in-forum conduct.

The purposeful availment prong is met "when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 624. The two "cornerstones" of purposeful availment are "voluntariness and foreseeability." C.W. Downer, 771 F.3d at 66. For the defendant's contacts with the forum to be considered voluntary, they must proximately result from the defendant's own actions, rather than the plaintiff's unilateral activities. PREP Tours, 913 F.3d at 20. Foreseeability in this context means that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). This standard ensures that an exercise of jurisdiction is not based on the defendant's "random, fortuitous, or attenuated [forum] contacts." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting Burger King, 471 U.S. at 475).

7

For purposes of this prong, O'Neil relies on the "stream of commerce plus" theory of personal jurisdiction. See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 112 (1987); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992). Under that theory, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Asahi, 480 U.S. at 112. To establish purposeful availment, the plaintiff must demonstrate some additional conduct by the defendant directed toward the forum state, such as "advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.; see Knox v. MetalForming Inc., 914 F.3d 685, 691-92 (1st Cir. 2019). Evidence tying Elektrika to the Thymatron marketing efforts in New Hampshire or ongoing maintenance and repair services to New Hampshire purchasers of the device could constitute "plus" factors evincing Elektrika's deliberate attempt to serve New Hampshire. O'Neil has, therefore, presented a colorable claim that she could satisfy the purposeful availment prong.

Lastly, the reasonableness prong focuses on five factors that gage the extent to which the exercise of jurisdiction over a nonresident is fair and reasonable. Nowak v. Tak How

8

Investments, Ltd., 94 F.3d 708, 717 (1st Cir. 1996). These so-called "Gestalt factors" are:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (internal quotation marks omitted). Elektrika presents no persuasive arguments as to why the assertion of jurisdiction would be unreasonable here. For example, it has not shown that litigating the case in New Hampshire would be "onerous in a special, unusual, or other constitutionally significant way." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Considering that the injury occurred in New Hampshire to a New Hampshire resident, I have little trouble concluding that the Gestalt factors weigh in favor of the exercise of jurisdiction.

In sum, O'Neil has set out a colorable claim that discovery could yield evidence in support of each element of the specific jurisdiction test. The evidence she seeks is in Elektrika's exclusive possession. Accordingly, I grant her request for limited jurisdictional discovery, which must be focused on the specific jurisdictional issues relevant in this case. The discovery must be completed within 90 days and is confined to 15

9

written interrogatories, 5 document requests, and a video deposition of Jesse Pavel not to exceed one hour.

### IV. CONCLUSION

I deny Elektrika's motion to dismiss (Doc. No. 15) without prejudice to its renewal after O'Neil has had an opportunity to conduct limited jurisdictional discovery delineated above. Should Elektrika renew its motion, the briefing will be limited to a memorandum in support of Elektrika's motion to dismiss and a memorandum in opposition to the motion. In lieu of reply and sur-reply briefs, the court will schedule oral argument on an expedited basis.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

December 1, 2020

cc: Bijan Esfandiari, Esq.
James J. Bianco, Jr., Esq.
Joseph M. Desmond, Esq.
David Viens, Esq.
James M. Campbell, Esq.
Kathleen Marie Guilfoyle, Esq.