UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Diane O'Neil**

Case No. 20-cv-175-PB
v.                             Opinion No. 2021 DNH 151

**Somatics, LLC & Elektrika, Inc.**

**MEMORANDUM AND ORDER**

In this diversity action, Diane O'Neil, a New Hampshire resident, has sued two out-of-state corporate defendants, Somatics, LLC and Elektrika, Inc., after sustaining injuries from electroconvulsive therapy with a Thymatron instrument.  I allowed O'Neil to conduct jurisdictional discovery when Elektrika first moved to dismiss the claims against it for lack of personal jurisdiction.  Before me is Elektrika's renewed motion to dismiss on the same ground.  Because O'Neil has failed to demonstrate that Elektrika is subject to personal jurisdiction in New Hampshire, I grant the motion to dismiss.

## I.   BACKGROUND

The Thymatron is an instrument used to treat severe psychiatric disturbances by inducing a major motor seizure through a brief but intense electrical current applied to a patient's head in a process known as electroconvulsive therapy. From August 2016 until February 2017, O'Neil underwent multiple rounds of electroconvulsive therapy with a Thymatron at the

Elliot Hospital in Manchester, New Hampshire.  She allegedly
suffered brain damage and permanent neurocognitive injuries as a
result of that treatment.

Since its inception in the 1980s, the Thymatron has been
collaboratively designed and manufactured by Elektrika, a
privately held New York corporation, and Somatics, a Florida
limited liability company.  There is no overlap in ownership
between the two companies.  According to a 1997 exclusivity
agreement between Elektrika and Somatics, the two "have enjoyed
an exclusive and successful business relationship since 1983,
characterized by close collaboration in the design, manufacture,
and marketing of the Thymatron ECT device and accessories
worldwide."  Doc. No. 34 at 3.  In that contract, Elektrika
agreed to manufacture the Thymatron exclusively for Somatics, so
long as Somatics purchases at least fifty units every year.  In
turn, Somatics agreed to purchase the device exclusively from
Elektrika, provided that Elektrika supplies as many units as
Somatics "provides good purchase orders for."  Doc. No. 34 at 3.

Elektrika is the principal designer and manufacturer of the
device.  Elektrika designed the original Thymatron and has been
responsible for design updates, with Somatics suggesting some
specifications that Elektrika could reject.  In terms of
manufacturing, Elektrika assembles the main body of the device
in New York and ships it to Somatics in Florida.  Somatics

2

completes the assembly by installing additional parts and calibrating the device.

Somatics is exclusively responsible for the sale and distribution of the Thymatron.  At least since 2003, Somatics has marketed the device without any input from Elektrika.

An undated agreement between the two companies regarding quality assurance practices provides that Elektrika is "responsible for handling any repairs of the Thymatrons sent to be serviced and reporting the information to Somatics who will be responsible for maintaining the repair / Customer Complaint procedures."  Doc. No. 34 at 2.  Throughout the repair process, Somatics is the only entity that communicates with a Thymatron customer, such as a hospital.  The process starts when a hospital contacts Somatics with a maintenance or repair request. Somatics assigns a return merchandise authorization ("RMA") number to the machine in question and coordinates its transfer to Elektrika.  Typically, Somatics instructs the hospital to ship the device either directly to Elektrika's New York location or to Somatics, which then forwards it to Elektrika.  Upon receipt, Elektrika verifies that the machine is accompanied by an RMA issued by Somatics, examines the machine, and informs Somatics what work needs to be done.  After Somatics approves the proposed repair work, Elektrika completes the repair and returns the machine.  A packing slip provided by Somatics tells

Elektrika where and how to ship the repaired machine, typically either back to Somatics or directly to the hospital.  Somatics bills the hospital for the repair and remits payment to Elektrika.

The specific device that injured O'Neil was manufactured in 2005.  Elektrika has performed maintenance or repair work on that machine on three occasions, in June 2008, January 2010, and June 2020.  On each occasion, Elektrika received the machine and performed the work in New York.  Elektrika then shipped it back directly to the Elliot Hospital in New Hampshire.

In September 2013, Elektrika shipped a Thymatron component part directly to another hospital in New Hampshire, the Southern New Hampshire Medical Center.  That hospital placed the part order with Somatics, which later remitted payment to Elektrika.

Elektrika has no offices, facilities, employees, agents, or other representatives in New Hampshire.  It does, however, purchase printer cables, which are incorporated into the Thymatron, from a New Hampshire-based sales representative of a California company called Rapid Manufacturing.[1]  For the past ten years, Elektrika has placed via email approximately one order for 200 printer cables every year, paying around $1,000 per order.

---

[1] The cables are used to connect the printer to the PC board in the Thymatron instrument.

The complaint alleges product liability and negligence claims against Elektrika.  Specifically, Elektrika is allegedly liable for a negligent failure to warn, manufacturing and design defects, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness.  These theories of liability center on the idea that the Thymatron device is an inherently dangerous and defective device that was not accompanied by adequate warnings about the risks of undergoing electroconvulsive therapy.

After the complaint was filed, Elektrika moved to dismiss the claims against it for lack of personal jurisdiction.  O'Neil responded with a request to conduct jurisdictional discovery.  I denied without prejudice Elektrika's motion and granted O'Neil's request for limited jurisdictional discovery after concluding that she had proffered a colorable claim that Elektrika is subject to specific jurisdiction in New Hampshire.  After the parties conducted that discovery, Elektrika renewed its motion to dismiss for lack of personal jurisdiction.  I held a hearing on the motion in June 2021.  At the hearing, both parties agreed that I could decide the present motion on the record before me, without conducting an evidentiary hearing.

## II.  <u>STANDARD OF REVIEW</u>

When defendant contests personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), plaintiff bears the burden of

showing that a basis for asserting jurisdiction exists.  Nandjou
v. Marriott Int'l, Inc., 985 F.3d 135, 147 (1st Cir. 2021).
Where, as here, the court considers a Rule 12(b)(2) motion
without holding an evidentiary hearing, the court applies the
prima facie standard.  See id.  Under this standard, plaintiff
must "proffer evidence which, taken at face value, suffices to
show all facts essential to personal jurisdiction."  Baskin-
Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28,
34 (1st Cir. 2016).  In conducting this analysis, I must take
the evidence offered by plaintiff as true and construe it in the
light most favorable to plaintiff's jurisdictional claim.
Nandjou, 985 F.3d at 147-48.  I can also consider facts offered
by defendant, to the extent they are uncontradicted.  A Corp. v.
All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).

### III. **ANALYSIS**

Elektrika argues that it is not subject to personal
jurisdiction in New Hampshire.  O'Neil disagrees, arguing that
she has provided evidence of jurisdictional facts which, if
true, demonstrate that Elektrika's contacts with New Hampshire
satisfy the requirements of specific personal jurisdiction.

When assessing personal jurisdiction in a diversity case, a
federal court "is the functional equivalent of a state court
sitting in the forum state."  Baskin-Robbins, 825 F.3d at 34
(quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir.

1995)).  The court must determine whether an exercise of jurisdiction is proper under both the forum's long-arm statute and the due process requirements of the U.S. Constitution.  C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  Because New Hampshire's long-arm statute is coextensive with the due process clause, however, I need only consider whether exercising personal jurisdiction would comport with due process.  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999).

Due process requires that defendant "have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (cleaned up).  When plaintiff asserts specific jurisdiction, due process requires that (1) her "claim directly arises out of or relates to the defendant's forum-state activities"; (2) "the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state"; and (3) "the exercise of jurisdiction is ultimately reasonable."  Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).

Elektrika argues that its contacts with New Hampshire are neither related to O'Neil's claims nor do they amount to

purposeful availment of the forum.  Applying the prima facie standard, I conclude that the evidence here is insufficient to establish either relatedness or purposeful availment.

## A.   **Relatedness**

Plaintiff's claims for relief must "arise out of or relate to" defendant's contacts with the forum state.  Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1025 (2021). This is a "flexible, relaxed standard" that requires "only a demonstrable nexus between the complaint's claims and the activities in the forum that properly may be attributed to the defendant[], such that the litigation itself is founded directly on those activities."  PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 18 (1st Cir. 2019) (cleaned up).

In Ford, the Supreme Court rejected a "causation-only approach" to the relatedness inquiry.  141 S. Ct. at 1026.  The Court reasoned that the phrase "arise out of or relate to" is formulated in the disjunctive and only the "arise out of" language involves causation.  Id.  By contrast, the phrase "relate to" suggests "that some relationships will support jurisdiction without a causal showing."  Id.  That phrase, however, "incorporates real limits" and requires "a strong relationship among the defendant, the forum, and the litigation."  Id. at 1026, 1028 (cleaned up).

At issue in Ford was whether the courts of Montana and
Minnesota could exercise personal jurisdiction over Ford in
suits arising from in-state accidents involving two Ford
vehicles that were designed, manufactured, and purchased out of
state.  Id. at 1022.  In the absence of contacts related to the
specific vehicles involved in those crashes, the Supreme Court
focused on Ford's broader efforts to sell same-model vehicles in
each state.  Specifically, Ford had urged residents of Montana
and Minnesota to buy such vehicles through advertisements; the
vehicles were available for sale in those states; and Ford
dealers in those states regularly maintained and repaired the
company's vehicles.  Id. at 1028-29.  "Those contacts," the
Court explained, "might turn any resident of Montana or
Minnesota into a Ford owner — even when he buys his car from out
of state."  Id. at 1029.  Thus, the relatedness prong was met
because "Ford had systematically served a market in Montana and
Minnesota for the very vehicles that the plaintiffs allege[d]
malfunctioned and injured them in those States."  Id. at 1028.

Although the First Circuit has yet to address Ford, its
precedent is consistent with that decision.  In Nandjou, the
circuit reaffirmed its earlier holding that the relatedness
prong "'is not as rigid' as the proximate cause inquiry in the
tort context," and that "'strict adherence to a proximate cause
standard in all circumstances is unnecessarily restrictive.'"

985 F.3d at 149 (quoting Nowak v. Tak How Invs., Ltd., 94 F.3d
708, 715 (1st Cir. 1996)).  In that case, a Massachusetts
resident was on vacation in Canada when her husband and child
drowned in the pool of the Montreal Residence Inn, leading to a
wrongful death suit in Massachusetts against the hotel's owners.
Id. at 139.  Before booking their stay, plaintiffs' family
received several direct mailings from defendants at their
Massachusetts home advertising the Montreal Residence Inn,
including its pool.  Id.  The First Circuit concluded that the
lawsuit was sufficiently related to defendants' in-forum
activities.  Id. at 150.  Although their marketing efforts did
not proximately cause the tort, defendants' deliberate attempt
to cultivate business from plaintiff's family in Massachusetts
bore a sufficient nexus to the cause of action, which was based
on harm that plaintiff's family suffered while engaging in the
very relationship defendants sought to establish.  Id.

     The thrust of O'Neil's product liability and negligence
claims against Elektrika is that Elektrika designed an
inherently dangerous and defective product and failed to warn
her about the risks of its use.  She relies upon three sets of
contacts to establish personal jurisdiction in New Hampshire:
(1) Elektrika's maintenance and repair work, performed in New
York, on the specific machine that injured her, which Elektrika
then shipped back to New Hampshire; (2) Elektrika's shipment of

a Thymatron component part to another New Hampshire hospital;
and (3) Elektrika's once-a-year purchase of component parts for
the Thymatron (printer cables) from a California company via a
New Hampshire-based sales representative.

   None of those contacts have a causal link to O'Neil's
claims.  Whether those activities took place or not has no
bearing on O'Neil's claims that the Thymatron was defectively
designed, defectively manufactured, and unaccompanied by proper
warnings.  She does not allege, for example, that the device
that injured her was negligently repaired or maintained.
Therefore, her claims do not "arise out of" Elektrika's contacts
with New Hampshire.

   The question, then, becomes whether those contacts are
nonetheless "related to" O'Neil's claims because they evince "a
strong relationship among the defendant, the forum, and the
litigation." Ford, 141 S. Ct. at 1028 (cleaned up).  The facts
O'Neil cites do not support this theory of relatedness either.

   Unlike in Ford, Elektrika has not "systematically served a
market" for the Thymatron or any other product in New Hampshire.
See id.  There is no evidence that Elektrika marketed or sold
any Thymatrons in New Hampshire or otherwise sought to foster
relations with Thymatron customers in the State.  Nor is there
other evidence in the record tending to show "a strong
relationship" among Elektrika, New Hampshire, and this

litigation.  See id.  In contrast to the active and continuous engagement in the forum that satisfied relatedness in Ford, Elektrika had only remote and infrequent contacts related to the Thymatron with New Hampshire.  It cannot be said that those limited contacts might turn any New Hampshire resident into a Thymatron customer or end user.  See id. at 1029.

O'Neil's strongest evidence on relatedness shows that on three occasions Elektrika performed maintenance or repair work on the specific device that injured her.  One of those repairs occurred after her claims arose and is thus not relevant to the jurisdictional inquiry.  See Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) ("[I]n analyzing specific jurisdiction, contacts must generally be limited to those before and surrounding the accrual of the cause of action.").  The two relevant instance of repair work are not meaningfully related to O'Neil's claims.  The fact that Elektrika twice repaired the specific device in question and shipped it to the Elliot Hospital does not "form an important, or at least material, element of proof" in O'Neil's case.  See id. (cleaned up).  Nor can it be said that the litigation is otherwise "founded directly on those activities." PREP Tours, 913 F.3d at 18.

O'Neil argues that Elektrika's repair activities render this case analogous to Katz v. Spiniello Companies, where the district court held that Massachusetts had personal jurisdiction

over an out-of-state maintenance company that had sent its technicians from Massachusetts to Delaware to perform work on, and certify the airworthiness of, an airplane that subsequently crashed in Massachusetts.  See 244 F. Supp. 3d 237, 249 (D. Mass. 2017).  Plaintiffs there argued that because the plane's gust lock system was faulty, it was not airworthy and, therefore, the maintenance company was negligent in certifying the plane.  Id.  Defendant countered that its maintenance work and certification had nothing to do with the gust lock system and produced a record showing that it performed work on the plane's APU system.  Id. at 249-50.  The court held that plaintiffs had adequately alleged a causal link between their negligence claim and defendant's in-forum activities in part because the evidence did not show that the scope of the certification was limited to the APU system.  Id. at 250.

I agree with Elektrika that Katz is distinguishable. Unlike in that case, no one from New Hampshire performed the repair work on the device that injured O'Neil.  More importantly, there is no allegation that the scope of that work bears any relation to O'Neil's claims.[2]

---

[2] The First Circuit's decision in Nandjou likewise does not support a finding of relatedness here.  Whereas plaintiff there was injured while engaging in the business relationship that defendants' in-forum activities sought to create, the relationship with the Elliot Hospital was created and maintained exclusively by Somatics.  See 985 F.3d at 150.

Elektrika's shipment of a Thymatron component part to another New Hampshire hospital is likewise insufficiently related to O'Neil's claims.  This shipment has no "demonstrable nexus" to Elektrika's alleged misconduct in New Hampshire.  See PREP Tours, 913 F.3d at 18.  It is no more than an attenuated contact that bears a weak relationship to both the forum and this litigation.  Cf. Ford, 141 S. Ct. at 1028 (requiring a "strong relationship" in this context).

Lastly, O'Neil contends that Elektrika's yearly purchase of printer cables through a New Hampshire-based sales representative shows systemic contacts with the State that satisfy the relatedness requirement.  But placing a single purchase order every year from a California company by communicating via email with an employee working from New Hampshire pales in comparison to the scale of the systemic contacts in Ford.  See id. at 1028-29.  Despite their regularity, those purchases do not amount to widespread activities that can justify a relatedness finding under Ford.  See id.; cf. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 930 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales.").

In sum, none of O'Neil's claims relates to Elektrika's in-forum activities.  The nexus between them is too attenuated to

14

support an exercise of specific jurisdiction over Elektrika in
New Hampshire.

**B.**   **Purposeful Availment**

The purposeful availment prong is met when "defendant
purposefully and voluntarily directs his activities toward the
forum so that he should expect, by virtue of the benefit he
receives, to be subject to the court's jurisdiction based on
these contacts." United States v. Swiss Am. Bank, Ltd., 274
F.3d 610, 624 (1st Cir. 2001). The two "cornerstones" of
purposeful availment are "voluntariness and foreseeability."
C.W. Downer, 771 F.3d at 66. For defendant's contacts with the
forum to be considered voluntary, they must proximately result
from defendant's own actions, rather than plaintiff's unilateral
activities. PREP Tours, 913 F.3d at 20. Foreseeability in this
context means that "defendant's conduct and connection with the
forum State are such that he should reasonably anticipate being
haled into court there." Id. (quoting Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 474 (1985)). This standard ensures
that an exercise of jurisdiction is not based on defendant's
"random, fortuitous, or attenuated [forum] contacts." Carreras
v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011) (quoting
Burger King, 471 U.S. at 475).

For purposes of this prong, O'Neil relies on the "stream of
commerce plus" theory of personal jurisdiction. See Asahi Metal

Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 112 (1987); Boit
v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992).
Under that theory, "[t]he placement of a product into the stream
of commerce, without more, is not an act of the defendant
purposefully directed toward the forum State." Asahi, 480 U.S.
at 112.  To establish purposeful availment, plaintiff must
demonstrate some additional conduct by defendant directed toward
the forum, such as "advertising in the forum State, establishing
channels for providing regular advice to customers in the forum
State, or marketing the product through a distributor who has
agreed to serve as the sales agent in the forum State." Id.;
see Knox v. MetalForming Inc., 914 F.3d 685, 691-92 (1st Cir.
2019).

       The "plus" factors O'Neil cites do not show that Elektrika
purposefully availed itself of the benefits of doing business in
New Hampshire.  Elektrika did not seek to cultivate a market for
the Thymatron in New Hampshire by advertising in the State or
addressing customer complaints with New Hampshire residents.  I
agree with the California superior court in Carranza v. Somatics
LLC, another case involving similar claims against the same
defendants, that Elektrika's repair activities are insufficient
to show purposeful availment.  See Case No. 20STCV28893, Slip
Op. (Cal. Super. Ct. May 21, 2021), Doc. No. 39-6.

As that court explained in granting Elektrika's motion to
dismiss for lack of personal jurisdiction, the repair work was
performed in New York while Somatics directed the entirety of
the related transactions.  Here, as in Carranza, "[t]he evidence
shows that any repairs or replacements by Elektrika were done at
the direction of Somatics, communications with the customers
seeking repairs or replacement parts were with Somatics, and any
invoices were issued by Somatics."  Doc. No. 39-6 at 7.
Elektrika's only activity attendant to repairing the device used
in O'Neil's treatment involved shipping the device back to New
Hampshire.  But neither those shipments, which occurred twice
during the relevant period, nor Elektrika's shipment of a
Thymatron part to another New Hampshire hospital show that
Elektrika reached out beyond New York to exploit a market in New
Hampshire.  To be sure, those activities show that Elektrika had
knowledge that two Thymatron devices were being used in New
Hampshire.  But the fact that Elektrika shipped the device or a
component part to New Hampshire on three occasions over six
years does not create a foreseeable possibility that Elektrika
would be haled into a New Hampshire court.

O'Neil's reliance on Elektrika's purchases of printer
cables fares no better.  Elektrika's yearly exchange of emails
with a California company's sales agent who happened to live in
New Hampshire, which resulted in the once-per-year purchase of

17

printer cables, is the type of "random" and "fortuitous" event that is insufficient to satisfy the purposeful availment requirement.  See Sawtelle, 70 F.3d at 1391 (no purposeful availment where defendant attorneys' contact "with New Hampshire were limited, consisting primarily of written and telephone communications with the clients in the state where they happened to live").  Even considered collectively, the facts here do not support a finding of sufficient minimum contacts brought about by purposeful acts of Elektrika directed toward New Hampshire.

## IV.  CONCLUSION

After conducting jurisdictional discovery, O'Neil has failed to make the prima facie showing necessary to establish that there is personal jurisdiction over Elektrika in New Hampshire.  Accordingly, I grant Elektrika's motion to dismiss for lack of personal jurisdiction (Doc. No. 32).

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 24, 2021

cc:   Counsel of record